**AMMEEN VALENZUELA ASSOCIATES LLP**
750 Barrister Building
155 E. Market St.
Indianapolis, IN 46204-3253
Telephone: 1.317.423.7505
Facsimile: 1.800.613.4707
jammesa@avalawin.com
James J. Ammeen, Jr., No. 18519-49

-and-

**REITLER KAILAS & ROSENBLATT LLC**
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: 1.212.209.3050
Facsimile: 1.212.371.5500
bcaplan@reitlerlaw.com
Brian D. Caplan, *pro hac vice application to be submitted*

*Attorneys for Plaintiffs CMB Entertainment, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CMB ENTERTAINMENT, LLC, and BRYAN ABRAMS, :
derivatively on behalf of CMB ENTERTAINMENT, LLC, :
                                             :
                             Plaintiffs,    :
                                               :
       -against-                     :
                                             :
MARK CALDERON and PYRAMID ENTERTAINMENT :
GROUP, INC.,                               :
                                             :
                        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:19-cv-2703

**COMPLAINT AND JURY DEMAND**

Plaintiffs CMB Entertainment, LLC ("CMB") and Bryan Abrams ("Abrams"), derivatively on behalf of CMB (collectively, "Plaintiffs"), by their undersigned counsel, as and for their Complaint against Defendants Mark Calderon ("Calderon") and Pyramid Entertainment Group, Inc. ("Pyramid" and collectively with Calderon, "Defendants") hereby allege as follows:

## NATURE OF ACTION

1.      CMB, a limited liability company whose members are two of the founding members of the well-known R&B group popularly known as "Color Me Badd" (the "Group"), is the owner of the federally registered trademark "COLOR ME BADD" associated with the Group (the "Mark").

2.      Plaintiff Abrams is one of the two members of CMB and brings this action on behalf of CMB to redress Defendants' willful infringement of the Mark in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a).  Plaintiffs also seek damages against Calderon for his unfair competition practices in violation of both Section 43 of the Lanham Act, 15 U.S.C. §1125(a) and the common laws of the State of Indiana, and for Calderon's breach of fiduciary duty to CMB under Indiana state law.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 by reason of the fact that this action arises under the Lanham Act (15 U.S.C. §1051 et seq.).  This Court has pendent jurisdiction over any claims asserted herein which arise under state law, including without limitation, Plaintiffs' claims seeking damages for common law unfair competition and breach of fiduciary duty, pursuant to 28 U.S.C. §1367 in that such claims flow from a common nucleus of operative facts.

4.      Venue in this District is proper under 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to the causes of action herein occurred, in the State of Indiana and the trademark that is the subject of this action is owned by CMB, an Indiana limited liability company, and is therefore situated in this District.

**PARTIES**

5.      Plaintiff CMB Entertainment, LLC is a limited liability company formed under the laws of the State of Indiana and has two members: plaintiff Abrams and defendant Calderon.

6.      Plaintiff Abrams is a resident and citizen of the State of Oklahoma.

7.      Upon information and belief, Calderon is a resident and citizen of the State of Ohio.

8.      As a member of CMB, Calderon is in a relationship of trust and confidence with CMB and owes fiduciary duties to CMB.

9.      Calderon owes CMB a fiduciary duty to act in the utmost good faith, a duty of candor, and a duty to act in furtherance of the best interests of CMB, the Mark that CMB owns, and CMB's members.

10.     Indiana Code Section 23-18-8-1(1) provides, in relevant part, as follows:

> a suit on behalf of a limited liability company may be brought in the name of the limited liability company by the following:
>
> (1) A member of a limited liability company, whether or not the articles of organization provide for a manager or managers, who is authorized to sue by the affirmative vote of a majority in interest of the members, unless the vote of all members is required under IC 23-18-4-3. In determining the vote, the vote of a member who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company shall be excluded.

11.     As Calderon is a defendant in this action and has an interest in the outcome of this action that is adverse to the interest of CMB, Calderon's vote is excluded from a vote of CMB's members to bring the instant action against Calderon and Pyramid.

12.     Abrams is the sole remaining member with a vote and has elected, on behalf of CMB, to cause CMB to file the instant suit.

13.     Moreover, and despite the fact that no demand was made upon CMB by Abrams to commence this action, this derivative suit is proper notwithstanding the lack of any demand because any such demand would have been futile.  As described more fully below, Section 23-18-4-3(a) of the Indiana Code, which statute is applicable to CMB, requires that there be a majority vote of a limited liability company's members in order to take action on behalf of the company.  Because there are only two members of CMB, and one of those members is defendant Calderon (who unequivocally would not have voted to commence the instant action), any demand by Abrams to file this lawsuit would have resulted in a 50-50 deadlock, not the requisite majority to take action.

14.     Upon information and belief, Pyramid is a New York corporation organized and existing under the laws of the State of New York with its principal offices for the conduct of its business located at 377 Rector Place, Suite 21A, New York, New York.

15.     Upon further information and belief, Pyramid, as a booking agent, regularly transacts business in the State of Indiana, including, but not limited to, booking shows and performances for the Group, among others, in Indiana and entering into an agreement to provide booking services to the Group, which Group is operated by CMB, an Indiana limited liability company.

## FACTUAL BACKGROUND

**A.     Color Me Badd's Rise To Fame.**

16.     High school friends Abrams and Calderon, along with Sam Watters ("Watters") and Kevin Thornton ("Thornton"), formed the "hip-hop doo-wop" musical group professionally known as "Color Me Badd" in 1985.

17.     At all relevant times, Abrams was the lead singer of the Group.

18.     The Group signed a recording agreement with Giant Records in August 1990, and Color Me Badd's debut single "I Wanna Sex You Up" (co-written by the 4 founding Group members and Dr. Freeze) climbed up the charts in March 1991, peaking at number 2 on the Billboard Hot 100 and hitting number 1 on the Hot R&B/Hip-Hop Songs chart.

19.     Thereafter, the Group enjoyed tremendous popular and commercial success during the 1990's: the Group released four studio albums and several chart-topping singles (including "All 4 Love," "I Adore Mi Amor," and "Thinkin' Back" (each co-written by the Group's 4 founding members); was nominated for many awards, including Grammys, winning several industry awards; and toured across the United States with Paula Abdul.

20.     The Group took a hiatus in late 1998, with each of the founding Group members pursuing their own personal goals.

21.     The Group has made a lasting contribution to the music industry – and the R&B genre in particular – which contribution was recognized in 2000 when the Group was inducted into the Oklahoma Music Hall of Fame.

22.     On several occasions during the Group's hiatus from 2000 to 2009/2010, Abrams performed as Color Me Badd without the other members of the Group, and without their objection, and kept the Mark alive and in use.

**B.    The Revival of Color Me Badd.**

23.     In July 2010, Abrams and Calderon re-formed the Group – then a duo comprised only of Abrams and Calderon – and performed as Color Me Badd at a concert in Hawaii.

24.     Thornton rejoined the Group shortly thereafter, and the three founding Group members (Abrams, Calderon and Thornton) formed CMB on May 26, 2011 to conduct the

Group's operations in the music industry, including, but not limited to, owning and administering the Group's intellectual property rights, such as the Mark.

25.     CMB is the duly registered sole owner of the Mark.

26.     At the time of the formation of CMB, Abrams, Calderon and Thornton each held an equal one-third interest in the company.

27.     Although an operating agreement for CMB was drafted by attorney Donald Wruck in October 2013, no such operating agreement was ever fully executed.

28.     As such, Section 23, Article 18 of the Indiana Code governs the operations and conduct of CMB and its members, including defendant Calderon.

29.     Per Indiana Code Section 23-18-4-3(a), a majority vote of CMB's members is required for CMB to make decisions relating to its business, including, but not limited to, the decision of whether to authorize an individual or entity to utilize and/or commercially exploit the Mark.

30.     From 2011 onward to the present day, the Group's popularity was rejuvenated.

31.     Abrams, Calderon and Thornton performed together jointly as Color Me Badd from 2011 through August 2013, when Calderon and Thornton unilaterally refused to perform with Abrams any further and refused payment to Abrams during the 17 months that Calderon and Thornton performed together to the exclusion of Abrams.

32.     From August 2013 through December 2014, Martin Kember, as a contract employee, performed with Calderon and Thornton.

33.     On January 5, 2015, Abrams rejoined the Group as its lead vocalist and frontman, Thornton subsequently resigned, and Kember's relationship with the Group ended.

34.     Thereafter, Thornton commenced an Indiana state court action against Abrams, Calderon and CMB on or about January 22, 2015, which action was removed to the United States District Court for the Southern District of Indiana, Case No. 1:15-cv-00320-SEB-MJD (the "Thornton Action").

35.     The Thornton Action was settled on or about May 11, 2016.

36.     Following the settlement, Thornton was no longer a member of CMB; Abrams and Calderon were, and are today, the sole remaining members of CMB.

37.     The Group continued to tour and perform together; and in or around 2015, Calderon and Abrams engaged Pyramid to be the Group's exclusive booking agent.

38.     Adam Emil began performing with the Group as a contract employee on or about May 29, 2015, though he is not a member of CMB and has no interest in the Mark.

39.     The Group, now comprised of Abrams and Calderon, has performed as "Color Me Badd" from 2015 through the present, touring internationally in Singapore, the United Kingdom, Australia, New Zealand, and Indonesia, going on a U.S. tour with New Edition spin-off Bell Biv DeVoe, and joining the "I Love The 90's" Tour with fellow 90's music sensations Vanilla Ice, Salt-N-Pepa, Tone Loc and Young MC.

40.     Since 2009, Abrams and/or his wife, Kim Frazier ("Frazier"), have operated and administered the Group's website (www.ColorMeBaddMusic.com) (the "CMB Website") and social media accounts on behalf of CMB and have used the Mark in connection therewith.

41.     The CMB Website depicts the images and likeness of both Abrams and Calderon and has links to the Group's social media accounts with Facebook (@ColorMeBadd) (the "CMB Facebook Page"), Instagram (@RealColorMeBadd) (the "CMB Instagram Account") and

Twitter (@RealColorMeBadd) (the "CMB Twitter Account", and collectively with the CMB Facebook Page and CMB Instagram Account, the "CMB Social Media Accounts").

42.     Frazier has historically managed the CMB Social Media Accounts and did so with the full consent and authorization of both Abrams and Calderon.

43.     The CMB Facebook Page was managed by Frazier from inception through August 2011, and then again in 2012 through the present.

44.     The CMB Instagram Account was created by Abrams and Frazier On April 1, 2015 with the consent and approval of Calderon.  Indeed, Calderon participated in videos taken and posted to the CMB Instagram Account.

45.     Frazier has managed the CMB Instagram Account from inception through the present.

46.     The CMB Twitter Account was created by Abrams and Frazier in January 2016 with the consent and approval of both Abrams and Calderon.

47.     Frazier has managed the CMB Twitter Account from inception through the present.

48.     From the creation of the CMB Social Media Accounts until May 2019, Calderon has never objected to the manner in which Frazier and/or Abrams managed CMB's Social Media Accounts.

**C.     CMB Has Owned the Mark Through Thick and Thin.**

49.     The Mark was first used by the Group in commerce in or about 1991.

50.     CMB filed a federal trademark registration for the Mark on or about July 22, 2011 and is the duly registered owner of the Mark under Serial #85378693, Registration #4303587.

51.     Neither Calderon nor Abrams has been a model citizen and each, on occasion, has engaged in conduct arguably detrimental to the value of the Mark.

**D.      Calderon Hijacks The Mark In Order to Pursue a Solo Career.**

52.     Calderon has, on several occasions in the past, expressed an interest in pursuing a solo career and has unsuccessfully sought permission from Abrams and CMB to use the Mark in connection with that endeavor.

53.     Neither CMB nor Abrams has ever authorized Calderon to, in any way, commercially exploit the Mark in connection with his solo musical performances.

54.     Upon information and belief, in the spring of 2019, Calderon made plans to launch his solo career.

55.     Upon further information and belief, Calderon intended to use the Mark to boost his debut as a solo artist and planned to release his debut single on or about May 16, 2019.

56.     Upon information and belief, by letter dated April 30, 2019 (the "April 30, 2019 Letter"), Calderon, by his counsel, Chuck Allen Floyd, Esq., falsely represented to third parties, including, but not limited to, Pyramid, that "Mr. Calderon and Mr. Abrams have equal right to use and exploit the mark provided each party accounts to the other for such use." A true and correct copy of the April 30, 2019 letter is annexed hereto as Exhibit A.

57.     Upon information and belief, Calderon has told various agents, buyers, and promoters that Calderon has the right to exploit the Mark unilaterally.

58.     On May 1, 2019, Kevin Couch, on behalf of Calderon, emailed Abrams (the "May 1, 2019 Email") to express Calderon's purported intention to "end his relationship with [Abrams] in terms of performing/conducting business together collectively as Color Me Badd"

subject to performing together at shows booked as of the time of the May 1, 2019 Email.  A true and correct copy of the May 1, 2019 Email with the attachment is annexed hereto as Exhibit B.

59.     In the May 1, 2019 Email, Mr. Couch indicated that Calderon "will exercise his right as 50% owner of the COLOR ME BADD trademark to solicit performance opportunities as Color Me Badd."

60.     Contrary to the assertions of attorney Floyd in the April 30, 2019 Letter, Calderon's representations to various third parties, and Mr. Couch's assertions in the May 1, 2019 Email, Calderon is not a 50% owner of the Mark and does not have the unilateral right to exploit the Mark.

61.     CMB is the sole 100% owner of the Mark; Calderon merely has a 50% membership interest in CMB.

62.     By letter dated May 15, 2019 (the "May 15, 2019 Letter"), Abrams' counsel informed Calderon that Calderon was not individually a 50% owner of the Mark, and that he did not have the unilateral right to commercially exploit the Mark, which was the property of CMB. The May 15, 2019 Letter also demanded, on behalf of both Abrams and CMB, that Calderon immediately cease and desist his wrongful conduct.  A true and correct copy of the May 15, 2019 Letter is annexed hereto as Exhibit C.

63.     Calderon did not cease and desist his wrongful conduct.

64.     Instead, he has continued to wrongfully use the name "Color Me Badd" and the Mark without the authorization or consent of CMB to book, promote and/or perform solo musical performances.

*The Unauthorized Concerts*

65.      In anticipation of the May 16, 2019 release of his first solo song, "It's Like Good Sex", Calderon purported to terminate his business relationship with Abrams, subject to the two members finishing their pre-existing contractual performance commitments, and expressed his intention to commercially exploit the Mark and solicit performance opportunities as "Color Me Badd".

66.      Upon information and belief, even prior to the May 1, 2019 Email, Calderon had been unilaterally commercially exploiting the Mark and soliciting performance opportunities for the Group, to the exclusion of Abrams, in preparation for his impending solo debut.

67.      Upon information and belief, Calderon booked a performance, without Abrams, as "Mark Calderon & Friends of Color Me Badd" at Big D's After Dark in Pomona, California, on April 27, 2019, but this show was canceled.

68.      Upon further information and belief, Calderon has booked several shows to perform by himself, without Abrams, as "Color Me Badd" or "Color Me Badd featuring Mark Calderon" or some other similar billing (collectively, the "Unauthorized Concerts"), including, but not limited to the following shows:

| Date | Location | Venue | Billing |
|---|---|---|---|
| May 15, 2019 | Unknown | Unknown | "Color Me Badd" |
| July 5, 2019 | Delray Beach, Florida | Honey Downtown | "Color Me Badd with Mark Calderon" |
| July 27, 2019 | Atlantic City, New Jersey | Ocean Casino | "Color Me Badd feat. Mark Calderon" |
| August 3, 2019 | San Diego, California | Petco Park | "Color Me Badd" |
| August 24, 2019 | Bakersfield, California | Stramler Park | "Color Me Badd featuring Mark Calderon" |

69.      Calderon has used his personal Twitter account (@TheMarkCalderon) to promote the Unauthorized Concerts: (i) on June 17, 2019, Calderon tweeted: "Summer Bash Groove 99.3

Bakersfield CA here we come! @Groove993 CMB feat MC" with a copy of a promotional advertisement for the Groove 99.3 Summer Bash concert with "COLOR ME BADD FEATURING MARK CALDERON", and (ii) on June 23, 2019, Calderon tweeted a promotional advertisement for the "I Want My 90's Back" 4th of July Weekend concert for "COLOR ME BADD WITH MARK CALDERON".

70.     Notably in the advertisements tweeted by Calderon for the Unauthorized Concerts, the design either (i) minimizes Calderon's name and emphasizes the Mark, or (ii) uses the Mark without Calderon's name.

71.     Upon information and belief, Calderon authorized third parties to use the Mark in connection with the promotion of the Unauthorized Concerts.

72.     Neither Abrams nor CMB authorized Calderon to use the Mark in connection with the Unauthorized Concerts or in connection with the advertising and promotion of such concerts.

73.     For example, neither CMB nor Abrams ever received any offer or contract relating to the August 3, 2019 concert in San Diego, California.

74.     When Abrams called the venue to learn more about the concert, the venue expressed great disappointment and was very surprised to learn that Abrams, the Group's lead vocalist, was not notified of the show's existence and might not be there.

75.     Egregiously, the promotional advertisement for the August 3 concert, a copy of which is annexed hereto as Exhibit D, indicates that "COLOR ME BADD" is performing, not just Calderon, and depicts the image and likeness of Abrams.

76.     Upon information and belief, Calderon has or intends to perform both the Group's songs and his solo material at the Unauthorized Concerts.

### *Calderon's Improper Use of the Mark to Promote His Solo Material*

77.     Upon information and belief, and despite being aware of the CMB Facebook Page, on or about May 12, 2019, Calderon and Couch created a new facebook page for "Color Me Badd Official" with a picture of Calderon only without Abrams, and using a logo ("Color Me Badd feat. Mark Calderon") emphasizing the Mark.

78.     Upon further information and belief, Calderon's counterfeit facebook page was created to promote the Unauthorized Concerts and his soon-to-be-released solo material.

79.     On or about May 16, 2019, Calderon released a solo song, "It's Like Good Sex" and released a companion video on or about June 27, 2019.

80.     Calderon has been promoting his new single and the video for the single through his personal Twitter account (@TheMarkCalderon) using the hashtag #colormebadd in posts he published on May 18, May 19, May 23, May 24, June 14, June 18, June 19, June 20, June 21, June 22, June 23, June 25, and June 26.

81.     Calderon has also been promoting his new single and video on Instagram (@themarkcalderon) using the hashtag #colormebadd in posts he published on May 13, May 15, May 24, May 28, June 14, and daily from June 17-26, 2019.

82.     Calderon is plainly using the Mark to enhance his solo career.

### *Calderon Improperly Interferes with CMB's Social Media Channels*

83.     Not only did Calderon seek to create competing social media channels to promote his solo career, Calderon (either by himself or in concert with Kevin Couch) sought to eviscerate his competition, CMB – the very company he is a member of, by filing reports of trademark infringement to shut down CMB's Facebook Page and Instagram Account.

84.    On May 15, 2019, the same day as the May 15, 2019 Letter, Calderon and/or Couch, filed a trademark infringement report with Facebook to remove the CMB Facebook Page.

85.    On May 15, 2019, Frazier received a notice from Facebook informing Frazier that the CMB Facebook Page had been removed from Facebook due to the report by Calderon and/or Couch.

86.    As a result of Calderon and/or Couch's actions in shutting down the CMB Facebook Page on May 15, 2019, neither Abrams nor Frazier was able to communicate with fans or further promote the Mark or future shows already booked for the Group via Facebook.

87.    Upon information and belief, on or about May 15, 2019 or May 16, 2019, Calderon and/or Couch also filed a report with Instagram alleging that the CMB Instagram Account infringes or violates the purported rights of Calderon.

88.    On May 16, 2019, Frazier received a notice from Instagram informing Frazier that the contents of the CMB Instagram Account had been removed due to the report by Calderon and/or Couch.

89.    As a result of Calderon's and/or Couch's actions in shutting down the CMB Instagram Account, neither Abrams nor Frazier was able to communicate with fans or further promote the Mark or future shows already booked for the Group via Instagram.

90.    By letter dated May 21, 2019, Abrams, through counsel, demanded that Couch and Calderon give Facebook and Instagram consent to restore the CMB Facebook Page and CMB Instagram Account, respectively.

E.    **Calderon's Willful Infringement of the Mark Has Caused Confusion and Devalues the Mark.**

91.    Abrams and Calderon as the Group are scheduled to and have executed contracts for both of them to perform several authorized concerts jointly as "Color Me Badd" over the next five months (the "CMB Concerts"):

| Date | Location | Venue |
|------|----------|-------|
| July 12, 2019 | Honolulu, Hawaii | Neal S. Blaisdell Concert Hall |
| August 6, 2019 | Jackson, Michigan | Jackson County Fair |
| August 15, 2019 | Rahway, New Jersey | Union County Performing Arts Center |
| August 17, 2019 | Valdosta, Georgia | Wild Adventure Theme Park |
| August 31, 2019 | Torrance, California | Torrance High School |
| December 5, 2019 | Detroit, Michigan | Motor City Casino Hotel |

92.    As is apparent from the below integrated schedule listing both the known upcoming Unauthorized Concerts and the upcoming CMB Concerts, there is a significant likelihood of confusion in the marketplace relating to the ownership and origin of the Mark given the overlap:

| Date | Location | Performer(s) |
|------|----------|--------------|
| July 5, 2019 | Delray Beach, Florida | Calderon |
| July 12, 2019 | Honolulu, Hawaii | Abrams and Calderon |
| July 27, 2019 | Atlantic City, New Jersey | Calderon |
| August 6, 2019 | Jackson, Michigan | Abrams and Calderon |
| August 15, 2019 | Rahway, New Jersey | Abrams and Calderon |
| August 17, 2019 | Valdosta, Georgia | Abrams and Calderon |
| August 24, 2019 | Bakersfield, California | Calderon |
| August 31, 2019 | Torrance, California | Abrams and Calderon |
| December 5, 2019 | Detroit, Michigan | Abrams and Calderon |

93.    Plainly, there is a likelihood of confusion as to the owner of the Mark and the quality of the goods and services associated with the Mark if Calderon performs shows without Abrams, disappointing fans who expect to see Abrams and/or who expect to hear only the

Group's songs, not Calderon's individual material, and Calderon's conduct will, if it has not already, damage the Mark.

94.     The above activity by Calderon results in irreparable harm and injury to CMB in that, among other things: (i) it deprives CMB of the absolute right to determine the manner in which the name "Color Me Badd" is presented to the general public, (ii) it unlawfully exploits the commercial value that CMB has developed in the Mark, (iii) to the extent that the concert performances of Calderon are of inferior quality, it irreparably harms and injures the reputation of CMB, because the public is unaware that the concert performances did not originate with both of the members of the Group, and (iv) it deprives CMB of profits to which CMB would otherwise be entitled by reason of said concert performances.

95.     Plaintiffs have notified Calderon that he has no right to use the Mark unilaterally, either in connection with the Unauthorized Concerts or to promote his solo career.

96.     Calderon has failed and refused to cease and desist his infringing activities.

97.     Calderon has acted intentionally, willfully and in bad faith.

**F.    Pyramid's Willful Infringement of the Mark**

98.     Upon information and belief, on May 1, 2019, Calderon informed Pyramid of his "plans to move forward in exercising his 50% ownership in the trademark and perform on his own as Color Me Badd."

99.     Pyramid, who had been rendering booking services to the Group from 2015 on, knew, or should have known, from its relationship with both Abrams and Calderon, that the Group (via CMB) was the owner of the Mark, not Calderon in his individual capacity.

100.    Despite the fact that Pyramid's booking agreement was with both members of CMB, not just Calderon, Pyramid severed ties with Abrams on May 2, 2019.

101.   Indeed, Pyramid's website currently uses the Mark to advertise for the Group as follows: "COLOR ME BADD FEATURING MARK CALDERON".  Screenshots of Pyramid's webpage for the Group (https://pyramid-ent.com/artist/color-me-badd/) are annexed hereto as collective Exhibit E.

102.   CMB has never authorized Pyramid to use the Mark in connection with the phrase: "Color Me Badd featuring Mark Calderon" or any other iteration of the Group without Bryan Abrams.

103.   On or about May 20, 2019, Abrams discovered that Calderon, Couch and/or Pyramid had booked another show for the Group: the August 3, 2019 "Downtown Throwdown" concert in Petco Park.

104.   The next day, Abrams,through counsel, clarified for Pyramid that Calderon has no right to use the Mark alone and advised Pyramid that, to the extent Pyramid marketed, promoted, advertised, or booked engagements for Calderon as "Color Me Badd" using the Mark, Pyramid would, among other things, be committing acts of trademark infringement.

105.   Pyramid's website continues to use the Mark in an unauthorized manner, infringing on CMB's rights.

106.   The above activity by Pyramid results in irreparable harm and injury to CMB in that, among other things: (i) it deprives CMB of the absolute right to determine the manner in which the name "Color Me Badd" is presented to the general public, (ii) it unlawfully exploits the commercial value that CMB has developed in the Mark, (iii) to the extent that the concert performances of Calderon are of inferior quality, it irreparably harms and injures the reputation of CMB, because the public is unaware that the concert performances did not originate with both

of the members of the Group, and (iv) it deprives CMB of profits to which CMB would otherwise be entitled by reason of said concert performances.

107.   Plaintiffs have notified Pyramid that Calderon does not have the right to use the Mark in connection with the Unauthorized Concerts, including those of the Unauthorized Concerts booked by Pyramid.

108.   Plaintiffs have notified Pyramid that Pyramid does not have the right to continue booking shows for Calderon only using the Mark.

109.   Pyramid has failed and refused to cease and desist its infringing activities.

110.   Pyramid has acted intentionally, willfully and in bad faith.

## FIRST COUNT

### (Lanham Act 15 U.S.C. §1125(a) Against Calderon)

111.   Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

112.   This claim arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition (15 U.S.C. §1125(a)), and involves false designations of origin and false designations in commerce.

113.   The name "Color Me Badd" and the Mark has been sold, distributed and advertised widely throughout the United States in connection with the sale of music recordings and live concert performances.  As a result of said sales, distribution and advertisement, the name "Color Me Badd" has developed and now has a secondary and distinctive meaning to purchasers of goods and services including, but not limited to, those who attend the Group's performances and those who purchase recordings of the Group.

114.    The Unauthorized Concerts by Calderon billed as "Color Me Badd","Color Me Badd featuring Mark Calderon", or "Color Me Badd with Mark Calderon" are so related to the concert performance services of the Group that Calderon's Unauthorized Concerts are likely to cause and have caused confusion as to the source of such services.

115.    Calderon's performances at the Unauthorized Concerts performances is, or will be, of inferior quality compared to the performances of Calderon and Abrams together and will accordingly be damaging to and will dilute the goodwill incurred and generated in the name "Color Me Badd".

116.    Calderon, by misappropriating and using the Mark, has and will falsely misrepresent and falsely describe to the general public the origin and source of the concert performance services so as to create the likelihood of confusion by the ultimate purchaser or concertgoer as to both the source and sponsorship of such concert performances services. Calderon's activities will and do constitute express and implied misrepresentations that the Unauthorized Concerts were created, authorized, or approved by CMB.

117.    The unauthorized and unlawful sale by Calderon of his solo concert performance services has impaired and will impair, or cause the likelihood of impairing, the goodwill of CMB.

118.    The aforesaid acts of Calderon are in violation of Section 43(a) of the Lanham Act in that Calderon has used and will use, in connection with services, a false designation of origin.

119.    As a result of Calderon's aforesaid conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by CMB in the Mark.  This continuing loss of goodwill cannot be properly calculated and thus constitutes

irreparable harm and an injury for which Plaintiffs have no adequate remedy at law.  Plaintiffs have been and will continue to be irreparably harmed unless and until Calderon is enjoined by this Court.

120.    As a result of the foregoing, Plaintiffs are entitled to injunctive relief as well as monetary damages.

121.    As a result of the foregoing, Plaintiffs are entitled to treble damages.  Calderon had direct and full knowledge of CMB's rights in the Mark before the acts complained of herein. The knowing, intentional and willful nature of Calderon's acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

### SECOND COUNT

### (Lanham Act 15 U.S.C. §1125(a) Against Pyramid)

122.    Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein

123.    This claim arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition (15 U.S.C. §1125(a)), and involves false designations of origin and false designations in commerce.

124.    The name "Color Me Badd" and the Mark has been sold, distributed and advertised widely throughout the United States in connection with the sale of music recordings and live concert performances.  As a result of said sales, distribution and advertisement, the name "Color Me Badd" has developed and now has a secondary and distinctive meaning to purchasers of goods and services including, but not limited to, those who attend the Group's performances and those who purchase recordings of the Group.

125.     The Unauthorized Concerts booked by Pyramid and billed as "Color Me Badd", "Color Me Badd featuring Mark Calderon" or "Color Me Badd with Mark Calderon" are so related to the concert performance services of the Group that the Unauthorized Concerts are likely to cause and have caused confusion as to the source of such services.

126.     Calderon's performances at the Unauthorized Concerts performances is, or will be, of inferior quality compared to the performances of Calderon and Abrams together and have been or will accordingly be damaging to and have or will dilute the goodwill incurred and generated in the name "Color Me Badd".

127.     Pyramid, by misappropriating and using the Mark, has and will falsely misrepresent and falsely describe to the general public the origin and source of Calderon's concert performance services so as to create the likelihood of confusion by the ultimate purchaser or concertgoer as to both the source and sponsorship of such concert performances services.  Pyramid's activities do and will constitute express and implied misrepresentations that the Unauthorized Concerts were created, authorized, or approved by CMB.

128.     The unauthorized and unlawful promotion and booking by Pyramid of Calderon's solo concert performance services has impaired or will impair, or cause the likelihood of impairing, the goodwill of CMB.

129.     The aforesaid acts of Pyramid are in violation of Section 43(a) of the Lanham Act in that Pyramid has used and will use, in connection with services, a false designation of origin.

130.     As a result of Pyramid's aforesaid conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in the Mark.  This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiffs have no adequate remedy at law.  Plaintiffs

have been and will continue to be irreparably harmed unless and until Pyramid is enjoined by this Court.

131.    As a result of the foregoing, Plaintiffs are entitled to injunctive relief as well as monetary damages.

132.    As a result of the foregoing, Plaintiffs are entitled to treble damages.  Pyramid had direct and full knowledge of CMB's rights in the Mark before the acts complained of herein. The knowing, intentional and willful nature of Pyramid's acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

## THIRD COUNT

### (Unfair Competition Under the Lanham Act Against Calderon)

133.    Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

134.    CMB has been and is now engaged in the business of providing concert performances services and has extensively and continuously used the Mark in interstate commerce in connection with the marketing, promotion and sale of such services.  CMB has widely advertised and sold the Group's services under its trademark, including using the Mark in its marketing and sales information.

135.    Through widespread and favorable public acceptance and recognition, the Mark has become an asset of substantial value as a symbol of CMB, its quality services and goodwill. Such recognition and goodwill arose and accrued prior to the acts of Calderon complained of herein.

136.    CMB has expended significant time and money in promoting and advertising its services under the Mark, and the Mark has become associated with CMB as denoting the source

or origin of high quality concert performing services.  In the concert market and to the consumer of such services, the Mark denotes CMB as the source or origin of such services.

137.   At all times hereinafter mentioned, CMB had and continues to have the right to obtain the full benefit of the goodwill inherent in the use of its Mark with respect to the conduct of the business of the Group and in conjunction with selling, marketing and promoting the Group's services.

138.   At a point long after CMB marketed, advertised and sold its services, Calderon began to advertise and offer his solo concert performance services through the infringing use of identical and/or confusingly similar marks in connection with his concert performance services and used certain marketing information and logos identical with the marketing information and logos of CMB's.

139.   Calderon's use of the Mark is without authorization of Plaintiffs.

140.   Calderon has used and continues to use the infringing marks in connection with the same types of services as Plaintiffs in commerce and in the same channels of trade and customer base as Plaintiffs' services.  Calderon uses the Mark in connection with distributing, advertising and marketing his services throughout the United States, and in this District.

141.   At all times relevant, Calderon's unauthorized use of the Mark in connection with his solo concert performance services is likely to cause confusion, or to cause mistake, or to deceive prospective customers into believing that Calderon's services originated with CMB or are associated and affiliated with or sponsored or authorized by CMB and/or the Group.

142.   Upon information and belief, Calderon's copying of CMB's Mark and all of his acts complained of herein were done with the intent to cause and create a likelihood of confusion among customers with CMB's and/or the Group's services and as to an affiliation between

Calderon as a solo artist and CMB and/or the Group to capitalize improperly on the goodwill accruing to CMB and the Group.

143.   Calderon intentionally used the Mark in connection with the marketing, promotion and advertising of his solo concert performance and/or recording services in order to mislead the public to the belief that his services were affiliated with CMB and/or the Group.

144.   Calderon, by his improper use of the Mark, has falsely described or represented his services as the services of CMB and has, by causing such services to enter into commerce, created a tendency for such false description or representation to be understood as having an origin or sponsorship or license of CMB and/or the Group, thereby diverting income from CMB to Calderon.  CMB has been, is being and is likely to be damaged by the use by Calderon of the aforesaid false description or representation.

145.   At all times relevant hereto, Calderon was aware of CMB's use of the Mark.

146.   Upon information and belief, Calderon adopted the Mark to portray to potential consumers a relationship between his services and CMB and/or the Group's services.

147.    Calderon thus misappropriated the goodwill generated by CMB and the Group through his use of the Mark for Calderon's own commercial advantage and to the detriment of Plaintiffs and was done without the authorization or consent of Plaintiffs.

148.   Calderon acted intentionally, willfully and in bad faith and with the intent to injure Plaintiffs through Calderon's use of the Mark in connection with Calderon's services in interstate commerce.

149.   At all times mentioned, Calderon had no right to trade off of or take advantage of, CMB's and/or the Group's goodwill that CMB and the Group generated through the extensive marketing, advertising and sale of the Group's concert performance services.

150.    Calderon's aforesaid acts misrepresent the nature, characteristics and quality of Calderon's services.

151.    Accordingly, by virtue of the foregoing, Calderon knowing that he had no permission or authority to do so, traded off and/or took advantage of the customer goodwill that CMB and the Group had generated through the marketing, and sale of its services for Calderon's own benefit.

152.    Calderon's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

153.    Calderon's aforesaid acts have caused and are causing great and irreparable damage to Plaintiffs and unless enjoined by this Court, said irreparable injury will continue. Plaintiffs demand a monetary judgment along with punitive damages, treble damages and attorney's fees and full costs.

### **FOURTH COUNT**

### **(State Law Unfair Competition Against Calderon)**

154.    Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

155.    At all times relevant herein, as a result of the artistic and professional success of the Group "Color Me Badd" as musical performers and recording artists, the name and mark "Color Me Badd" is widely and favorably known throughout the United States, including, but not limited to, persons who comprise the market for concert performing services.

156.    Calderon has and will wrongfully impair the value of the contracts between CMB and others relating to the Mark and "Color Me Badd" goods and services. As such, Calderon will unfairly compete with CMB.

157. Plaintiffs have no adequate remedy at law, and if Calderon's activities are not enjoined, will suffer irreparable harm and injury as a result thereof.

## FIFTH COUNT

### (State Law Breach of Fiduciary Duty Against Calderon)

158. Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

159. As a member of CMB, Calderon is in a relationship of trust and confidence with CMB and owes fiduciary duties to CMB and its members, including Abrams.

160. Calderon owes CMB and Abrams a duty to act in the utmost good faith, a duty of candor, and a duty to act in furtherance of the best interests of CMB, the Mark that CMB owns, and CMB's members.

161. In violation of the relationship of trust, confidence and loyalty owed by Calderon to CMB and to Abrams, Calderon breached his fiduciary duties to CMB and its other member, Abrams, by engaging in the conduct described above.

162. Calderon's actions in using the Mark to promote his nascent solo career, interfering with CMB's Social Media Accounts, and engaging in morally repugnant behavior, among other things, have enriched Calderon to the detriment of Plaintiffs and the Mark.

163. As a proximate result of Calderon's breaches of fiduciary duties, Plaintiffs have been damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiffs respectfully request that the Court grant the following relief:

A. A preliminary injunction restraining, enjoining and prohibiting each of the Defendants, their officers, directors, agents, employees and/or other individual, or entity within their control or supervision from selling or promoting concert

performance services of Calderon to be those of "Color Me Badd" or "Color Me Badd featuring Mark Calderon" or "Color Me Badd with Mark Calderon";

B.   After a hearing on the merits, a permanent injunction prohibiting Defendants from offering the concert performance services of Calderon alone and/or with others, to the exclusion of Abrams, to be that of "Color Me Badd";

C.   That Defendants, their agents, and servants be enjoined during the pendency of this action and permanently from infringing the Mark in any manner, and from performing or promoting the performance of Calderon, to the exclusion of Abrams, as "Color Me Badd";

D.   That Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained in consequence of Defendants' infringement of the Mark;

E.   That Calderon be required to pay Plaintiffs such damages as Plaintiffs have sustained in consequence of Calderon's unfair competition practices; and to account for

F.   all gains, profits, and advantages derived by Calderon by said unfair competition practices;

G.   all gains, profits, and advantages derived by Defendants by their infringement of the Mark or such damages as the Court shall appear proper within the provisions of the Lanham Act;

H.   That the Court grant judgment in favor of Plaintiffs against Calderon for beach of fiduciary duty, in an amount to be determined at trial;

I.   Treble damages;

J.   Triple the amount of damages sustained by Plaintiffs as provided by 15 U.S.C. §1117;

K.   Pre-judgment interest as allowed by law;

L.     Reasonable counsel fees and costs; and

M.     Such further relief as the Court finds to be just and proper.

### REQUEST FOR TRIAL BY JURY

Plaintiffs request a trial by jury on all issues so triable as of right by a jury.

Dated: July 1, 2019

**AMMEEN VALENZUELA ASSOCIATES LLP**

By: /s/ James J. Ammeen, Jr.

750 Barrister Building
155 E. Market St.
Indianapolis, IN 46204-3253
Telephone:  1.317.423.7505
Facsimile:  1.800.613.4707
jammesa@avalawin.com
James J. Ammeen, Jr., No. 18519-49

-and-

**REITLER KAILAS & ROSENBLATT LLC**
885 Third Avenue, 20th Floor
New York, New York 10022
Telephone: 1.212.209.3050
Facsimile: 1.212.371.5500
bcaplan@reitlerlaw.com
Brian D. Caplan, *pro hac vice application to be submitted*

*Attorneys for Plaintiffs*